**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Action No. 11-cr-00303-REB-2
(Civil Action No.15-cv-02213-REB)

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

2. KILLIU FORD,

      Defendant-Movant.

---

### ORDER DENYING MOTION TO AMEND, CORRECT, OR MODIFY SENTENCE

---

**Blackburn, J.**

    This matter is before me on the following: (1) the **Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** [#349][1] filed November 12, 2015; (2) the *pro se* **Motion Requesting Permission to File Amendments to 28 U.S.C.S. 2255, and Amending Ex Post Facto, Nunc Pro Tunc, in the Interest of Justice, Pro Se** [#386] filed June 15, 2016; and (3) the **Motion To File Supplemental § 2255 Claim and Reply To Government's Opposition** [#393] filed June 24, 2016.  For the reasons discussed herein, I deny the claims in the § 2255 motion filed November 12, 2015.[2]

    The motions [#386 & #393] of Mr. Ford requesting permission to file amendments

---

1  "[#349]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2  Because Mr. Ford is acting *pro se* vis-à-vis  most of his claims, I continue to construe his *pro se* filings with the liberality due *pro se* litigants.  **See Erickson v. Pardus**, 551 U.S. 89, 94 (2007); **Andrews v. Heaton**, 483 F.3d 1070, 1076 (10th Cir. 2007); **Hall v. Belmon**, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing **Haines v. Kerner**, 404 U.S. 519, 520-21 (1972)).

or supplements to his initial § 2255 motion [#349] concern his effort to raise a claim

under ***Johnson v. United States***,___ *U.S.* ___, 135 S. Ct. 2551 (2015).  As to the

proposed ***Johnson*** claim, counsel for Mr. Ford has entered an appearance, filed the

**Motion to File Supplemental § 2255 Claim and Reply to Government's Opposition**

[#393], and filed a **28 U.S.C. § 2255 Supplemental Motion to Vacate Sentence** [#394]

which raises a ***Johnson*** claim.  For the reasons specified in this order, I deny the

motions to file amendments or supplements to the initial § 2255 motion [#349].

## I.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a federal prisoner claiming the right to be released

on the ground that his federal sentence "was imposed in violation of the Constitution or

laws of the United States, or that the court was without jurisdiction to impose such

sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack," may move to have his sentence vacated, set

aside, or corrected.

## II. BACKGROUND

### A.  Factual History

Mr. Ford and two co-defendants, Tracy Morgan and Augustus Sanford, were

indicted and tried together.  The Tenth Circuit described the relevant factual history as

follows:

> In August 2009, Mr. Morgan and his friend, Marvin Tabor, [a co-conspirator,] plotted to kidnap and rob Mario Armendariz.  Pursuant to their plan, Mr. Morgan attached a GPS tracking device to Mr. Armendariz's car while Mr. Armendariz was visiting Mr. Tabor's home.  Mr. Tabor then tracked Mr. Armendariz's location on the Internet using Google Maps, enabling Mr. Morgan and Mr. Ford to follow Mr. Armendariz in their vehicle.

> Also in late summer 2009, Mr. Tabor's brother-in-law, Mr. Sanford,

persuaded a police officer's minor child to steal four weapons and parts of a police uniform—including cargo pants, a black police shirt, and an orange reflective vest—from his father in exchange for two ounces of marijuana.  Mr. Sanford also painted his Chevrolet Tahoe black.

Around 11:00 p.m. on September 22, 2009, the Defendants and Mr. Tabor met at Mr. Tabor's house.  Mr. Sanford wore the stolen police gear.  The Defendants then departed to locate Mr. Armendariz.  Mr. Tabor remained at his home and tracked Mr. Armendariz using the GPS device and Google Maps, speaking with the Defendants on a cell phone to update them with Mr. Armendariz's location.

That night, Mr. Armendariz and his wife, Perla Flores, were getting into their car with their two young daughters outside of a cousin's house when they saw two armed men exit a black Chevrolet Tahoe and at least one other man arrive from across the street.  The men announced they were police officers and ordered Ms. Flores and Mr. Armendariz to lie on the ground.  One of the men was wearing a reflective police vest.  Evidence at trial established the Defendants were present.

Two of the men zip-tied Mr. Armendariz's arms and legs together, covered his head, and put him into the back of the Tahoe.  Mr. Ford got into the Tahoe and questioned Mr. Armendariz about where he kept his money while an unknown co-conspirator drove the Tahoe around.  Eventually the Tahoe dropped off Mr. Ford at Mr. Armendariz's home.  The Tahoe drove away and parked in a different location.

Meanwhile, Mr. Sanford drove Ms. Flores and her daughters in her car to the Flores–Armendariz home.  Mr. Ford and Mr. Morgan met him there.  The Defendants confronted Ms. Flores, demanding to know where Mr. Armendariz kept his money.  Ms. Flores refused to tell them.

Mr. Morgan put a gun to the three-year-old daughter's head, and Ms. Flores then told them the money was under her daughter's dresser.  Mr. Morgan retrieved $30,000 from under the dresser and left the home.  Mr. Sanford and Mr. Ford continued to search the house, but after realizing Mr. Morgan had already left with the money, they also exited the home.

Ms. Flores left the house looking for help.  She saw a black sport utility vehicle pick up Mr. Sanford and Mr. Ford.  The driver then drove away from the home, stopped several miles away, and dropped off Mr. Armendariz on the side of the road.

Later that night or early the next morning, Mr. Ford and Mr. Sanford looked for Mr. Morgan and found him at a Taco Bell.  They divided the money Mr. Morgan took from Mr. Armendariz's home.

Mr. Sanford returned to Mr. Tabor's home and complained to Mr. Tabor and Mr. Patterson about Mr. Morgan's keeping too much of the proceeds.  Mr. Ford called Mr. Tabor's home to discuss the kidnapping and robbery with Mr. Tabor and Mr. Patterson.  He also complained that Mr. Morgan kept more than his share of the money.  Mr. Morgan joined the phone call for a brief moment and told the others he would arrive at Mr. Tabor's house within several hours.  The group met at Mr. Tabor's house and redistributed the proceeds from the kidnapping and robbery.

*United States v. Morgan,* 748 F.3d 1024, 1028–30 (10th Cir. 2014) (footnotes omitted),

*cert. denied*, ___ U.S. ___, 135 S. Ct. 298 (2014).

### B.  Procedural History of Criminal Trial

Mr. Ford was indicted by a grand jury on two counts of kidnapping in violation of 18

U.S.C. § 1201(a)(1) for kidnapping Mr. Armendariz and Ms. Flores (Counts 1 and 2);

two counts of kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) and 3559(f)(2) for

kidnapping the minor children (Counts 3 and 4); one count of conspiracy to kidnap in

violation of 18 U.S.C. § 1201(c) (Count 5); and one count of use of a firearm during a

crime of violence in violation of 18 U.S.C. § 924(c) (Count 6).  Mr. Ford was convicted

by a jury on all counts and sentenced to the Bureau of Prisons for a term of 600 months.

More specifically, I sentenced Mr. Ford to 216 months on Counts 1, 2, and 5, to be

served concurrently with each other; 300 months on Counts 3 and 4, to be served

concurrently with each other, but consecutively to the concurrent sentences for Counts

1, 2, and 5; and 84 months on Count 6, to be served consecutively to all other

sentences.

On direct appeal Mr. Ford challenged the constitutionality of the federal kidnapping

statute, he challenged the jury instructions, and he argued that I violated Federal Rule

of Evidence 801(d)(2)(E) and the Sixth Amendment in admitting a post-kidnapping

telephone call.  *See Morgan,* 748 F.3d at 1030.  The Tenth Circuit affirmed the

convictions and sentences.  *See id.* at 1044.  The Supreme Court of the United States

denied Mr. Ford's petition for writ of certiorari on October 6, 2014.

### C. Procedural History of § 2255 Proceedings

On October 5, 2015, Mr. Ford filed a *pro se* **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** [#342] asserting eleven claims for relief. On October 7, 2015, I entered an order [#343] directing Mr. Ford to file an amended § 2255 motion on the proper form that includes specific factual allegations in support of his claims. On November 12, 2015, Mr. Ford, filed on the proper form a *pro se* **Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** [#349].

In the amended § 2255 motion, Mr. Ford again asserts eleven claims for relief. Claims one, two, three, four, nine, and eleven raise issues of trial court error and the withholding of evidence by the government. Claims five, six, seven, and eight raise issues of ineffective assistance of trial and appellate counsel. Claim ten is an actual innocence claim purportedly premised on newly discovered evidence. On December 11, 2015, the government filed its **Answer to Amended Motion to Vacate, Set Aside, or Correct Sentence** [#358]. On February 29, 2016, Mr. Ford filed a *pro se* **Reply/Response to Government's Answer to Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to U.S.C.S. 2255** [#372].

### III. ANALYSIS

### A. Claim One

Mr. Ford contends in claim one that the government violated ***Brady v. Maryland***, 373 U.S. 83 (1983), by failing to timely disclose exculpatory evidence, a latex glove discovered in the area where the victims were abducted, that could not be tested by the defense when it finally was disclosed because the glove had disintegrated. Although

Mr. Ford characterizes claim one as a ***Brady*** claim, the claim more properly is considered under ***California v. Trombetta***, 467 U.S. 479 (1984), because the glove allegedly was destroyed.  The government argues that claim one is defaulted because it was not raised on direct appeal.

A motion to vacate pursuant to 28 U.S.C. § 2255 is not available to test the legality of matters that should have been raised on direct appeal.  ***See United States v. Allen***, 16 F.3d 377, 378 (10th Cir. 1994).  Mr. Ford does not assert that claim one could not have been raised on direct appeal.  Therefore, claim one is procedurally defaulted and may not be raised in a motion pursuant to § 2255 unless Mr. Ford "can show cause for his procedural default and actual prejudice resulting from the alleged error[], or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." ***Id.***

Cause to overcome a procedural default "must be some objective factor external to the defense and not attributable to a defendant, such as interference by government officials making compliance with the relevant procedural rules impracticable or a showing that the factual or legal basis of the claim was not reasonably available to counsel." ***United States v. Salazar***, 323 F.3d 852, 855 (10th Cir. 2003).  Cause also "may be shown by ineffective assistance of trial or appellate counsel." ***Id.*** However, "attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." ***Id.*** (quotation marks and brackets omitted). "The fundamental miscarriage of justice exception to procedural default is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." ***United States v. McGaughy***, 670 F.3d 1149, 1159 (10th Cir. 2012) (quotation marks and brackets

omitted).

Mr. Ford maintains he can demonstrate cause for the procedural default of claim one because counsel on direct appeal was ineffective in failing to raise the claim.  To establish counsel was ineffective Mr. Ford must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  ***See Strickland v. Washington***, 466 U.S. 668, 687 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential." ***Id.*** at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." ***Id.***  It is Mr. Ford's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. ***See id.***  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." ***Boyd v. Ward***, 179 F.3d 904, 914 (10th Cir. 1999).

In the context of a claim that counsel on direct appeal was ineffective, "it is difficult to show deficient performance . . . because counsel 'need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" ***Cargle v. Mullin***, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting ***Smith v. Robbins***, 528 U.S. 259, 288 (2000)).  Thus, in considering a claim that appellate counsel was ineffective by failing to raise an issue on appeal, I must look to the merits of the omitted issue. ***See Neill v. Gibson***, 278 F.3d 1044, 1057 (10th Cir. 2001).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is

> more complicated, requiring an assessment of the issue
> relative to the rest of the appeal, and deferential
> consideration must be given to any professional judgment
> involved in its omission; of course, if the issue is meritless,
> its omission will not constitute deficient performance.

*Cargle*, 317 F.3d at 1202.

Under the prejudice prong, Mr. Ford must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

With respect to the merits of claim one, the Supreme Court in *Trombetta* noted that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. Thus, a due process violation occurs when the state fails to preserve or destroys evidence that has "an exculpatory value that was apparent before the evidence was destroyed" and was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489.

In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Supreme Court clarified that the Due Process Clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Instead, if the evidence is only potentially useful, i.e., "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," there is no due process violation unless the defendant proves the state acted in bad faith in destroying or failing to preserve the evidence. *Id.*

at 57-58.

Mr. Ford asserts that the latex glove was destroyed because it was not stored properly after being taken into evidence by the police.  However, he does not allege facts that demonstrate the government acted in bad faith in failing to preserve the glove.  As a result, his assertion that the glove could not be tested for DNA evidence that may have proven exculpatory is not sufficient to demonstrate his constitutional right to due process was violated.  ***See United States v. Martinez***, 744 F.2d 76, 80 (10th Cir. 1984) (holding that a defendant's argument that evidence "might have contained exculpatory information" goes to the "weight and sufficiency of the government's case" but does not demonstrate that the failure to preserve the evidence was a constitutional violation under ***California v. Trombetta***).

I conclude that claim one in the amended § 2255 motion is procedurally barred because the claim lacks merit.  In other words, Mr. Ford cannot demonstrate cause for his procedural default based on appellate counsel's alleged ineffectiveness.  Appellate counsel was not ineffective by failing to raise a claim that lacked merit.  Therefore, Mr. Ford is not entitled to relief with respect to claim one.

### B.  Claim Two

Mr. Ford's second claim in the amended § 2255 motion also relates to the latex glove.  He contends in claim two that an Assistant United States Attorney defrauded the Court and committed prosecutorial misconduct by making false statements in opposition to a defense motion for a continuance that was prompted by the late disclosure and destruction of the latex glove.  Although not entirely clear, Mr. Ford apparently contends the government fraudulently represented that the latex glove had no evidentiary value, had not been tested by the government, and that the motion to continue was made in

bad faith in order to delay the trial.  I denied the motion to continue the trial, explaining

as follows:

> Mr. Ford seeks leave to file a motion to continue the trial, currently scheduled to commence in less than two weeks, to "investigat[e] whether any forensic testing is possible at this stage, what are the factual circumstances, which caused evidence degradation and destruction, and what are factual and legal consequences of the government's actions."  (**Motion** ¶ 4 at 3.)  In particular, he maintains that the present condition of the glove may have prevented DNA collection and analysis, which I presume he believes would be potentially exculpatory.
>
> Nevertheless, the past and present condition of the glove and the circumstances surrounding the testing thereof are matters that can be explored fully and adequately on cross-examination of the forensic expert who performed the fingerprint analysis.  Mr. Ford's motion presents no compelling reason to delay the commencement of this trial. If dismissal of the charges proves to be warranted based on further developments during the preparation of the case for trial or during trial itself, dismissal can be addressed at that juncture.

([#162] at 2.)  Like claim one, the government contends claim two is procedurally

defaulted because it was not raised on direct appeal.  Mr. Ford asserts that he can

demonstrate cause for his procedural default because appellate counsel failed to raise

the claim on direct appeal.

I find that claim two is defaulted because Mr. Ford fails to allege specific facts

that demonstrate a meritorious constitutional claim for prosecutorial misconduct in

opposing his motion for a continuance.  Mr. Ford's disagreement with the government's

statements in opposition to the motion for a continuance do not demonstrate the

statements were false or that his constitutional rights were violated as a result of

prosecutorial misconduct.  Therefore, Mr. Ford fails to demonstrate appellate counsel

was ineffective by failing to raise this claim on direct appeal and the claim is

procedurally barred.

### C. Claim Three

Mr. Ford contends in claim three that the government withheld investigatory notes of a police interview of a key witness, Marvin Tabor, that could have been used to impeach Mr. Tabor's credibility at trial.   According to Mr. Ford, the interview was conducted by Agent Todd Wilcox on October 6, 2009, and included conflicting statements regarding whether Mr. Ford was involved in the commission of the crimes. Although not entirely clear, Mr. Ford apparently contends the investigatory notes should have been disclosed at trial after Agent Wilcox mentioned the interview at the conclusion of his testimony.  The government contends claim three is procedurally defaulted because it was not raised on direct appeal; however, Mr. Ford asserts that he can demonstrate cause for his procedural default because appellate counsel failed to raise the claim on direct appeal.

I find that claim three also is defaulted because Mr. Ford fails to allege specific facts that demonstrate a meritorious constitutional claim based on the alleged failure to disclose investigatory notes of the interview of Mr. Tabor.  Therefore, Mr. Ford fails to demonstrate appellate counsel was ineffective by failing to raise this claim on direct appeal and the claim is procedurally barred.

### D. Claim Four

Mr. Ford contends in claim four that in-court identifications by Perla Flores and Mario Armendariz violated his right to a fair trial.  The government argues that I may not consider claim four in the amended § 2255 motion because the claim was raised and resolved on direct appeal.  Mr. Ford concedes in his reply that he may not challenge the alleged identification by Ms. Flores because that claim was raised on direct appeal.

However, Mr. Ford maintains that the issue of the in-court identification by Mr. Armendariz was not raised on direct appeal and is not barred because counsel was ineffective in failing to raise the issue.

I agree that Mr. Ford did not raise on direct appeal the issue of the in-court identification by Mr. Armendariz.  Therefore, I reject the government's argument with respect to claim four.  However, I still must determine whether the issue of the in-court identification by Mr. Armendariz is barred because the claim could have been raised on direct appeal.  Although the government does not raise this procedural bar defense with respect to claim four, I may raise the defense *sua sponte* if Mr. Ford is given an opportunity to respond.  ***See United States v. Warner***, 23 F.3d 287, 291 (10th Cir. 1994).  As noted above, Mr. Ford recognizes that the issue of the in-court identification by Mr. Armendariz was not raised on direct appeal, and he argues that he can demonstrate cause for his procedural default based on direct appeal counsel's failure to raise the claim.   Under these circumstances, no additional opportunity to respond to the defense is necessary.

The in-court identification of Mr. Ford by Mr. Armendariz occurred after Mr. Armendariz testified on direct examination that his abductors were speaking to him after he was placed in the Tahoe.  The following exchange took place:

> Q:  Now, did there come a time while you were in the car you recognized one of the voices?
>
> A:  That's correct.
>
> Q:  Could you describe how that happened.
>
> A:  Okay.  When I was in the vehicle, when I was being placed in the SUV, my first instinct was to try to get any type of clues, any at all.  The one voice that kind of stuck out to me was a dude – this guy I was introduced to as Kilo.  That's they guy right there.

MR. BROWN:  Objection.  Move to strike.

* * * *

THE COURT:  The motion to strike is granted.  Therefore, the –
that part of Mr. Armendariz' response, "That's the guy right
there" is stricken.  It is not evidence.  It may not be used or
considered by you as evidence in this trial, ladies and
gentlemen of the jury, and you are so instructed.

Tr., Trial – Day 3 (June 13, 2012) [#285] at 85.  Subsequently, I denied Mr. Ford's

motion for a mistrial based in part on the in-court identification by Mr. Armendariz.  Tr.,

Trial – Day 4 (June 18, 2012) [#286] at 3-9.

"[M]otions for mistrial . . . call for an examination of the prejudicial impact of an

error or errors when viewed in the context of an entire case."  ***United States v.***

***Gabaldon***, 91 F.3d 91, 94 (10th Cir. 1996).  "[A] cautionary instruction is ordinarily

sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only

appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an

error."  ***United States v. Peveto***, 881 F.2d 844, 859 (10th Cir. 1989).  Furthermore,

juries are presumed to follow cautionary instructions.  ***See United States v. Muessig***,

427 F.3d 856, 865 (10th Cir. 2005).  Ultimately, I must determine if the evidence created

"so strong an impression on the minds of the jurors" that they could not "disregard it in

their consideration of the case" despite a cautionary instruction.  ***Maestas v. United***

***States***, 341 F.2d 493 496 (10th Cir. 1965).

I conclude that the issue of the in-court identification by Mr. Armendariz is

defaulted because Mr. Ford fails to allege specific facts that demonstrate a meritorious

claim that his right to a fair trial was violated.  In support of this conclusion, I rely on my

findings of fact and conclusions of law as set forth in my order denying Mr. Ford's

motion for mistrial.  Tr., Trial – Day 4 (June 18, 2012) [#286] at 3-9.  Because I conclude

Mr. Ford was not denied a fair trial, his argument that appellate counsel was ineffective by failing to raise this claim on direct appeal also lacks merit.  As a result, Mr. Ford is not entitled to relief with respect to claim four.

### E.  Claim Five

Claim five in the amended § 2255 motion has two parts.  Mr. Ford first contends in claim five that counsel was ineffective for failing to challenge the testimony of Mario Armendariz that he knew Mr. Ford from a juvenile jail in which they both served time.  According to Mr. Ford, Mr. Armendariz could not have known him from a juvenile jail because he is at least fifteen years older than Mr. Armendariz.  Mr. Ford further argues that challenging the testimony about knowing Mr. Ford from a juvenile jail would have demonstrated Mr. Armendariz was not a reliable witness and was testifying only to gain a lighter sentence in his own case.  In the second part of claim five, Mr. Ford contends that counsel neglected his case while counsel was at a conference in New York, which caused counsel not to see a plea offer from the government in a timely manner.  Mr. Ford alleges he would have accepted the plea offer.

Mr. Ford alters the focus of both parts of claim five in his reply.  With respect to counsel's alleged failure to challenge the testimony of Mr. Armendariz, he contends in his reply that counsel failed to file a pretrial motion for a voice line-up in order to challenge Mr. Armendariz's testimony that he recognized the voice of one of the kidnappers as discussed above in claim four.   With respect to counsel's alleged ineffectiveness in the context of plea negotiations, Mr. Ford asserts in his reply that counsel had a conflict of interest because he was campaigning to become a district attorney.  Although the parties have not addressed the issue of whether Mr. Ford's new assertions in support of claim five in his reply relate back to the amended § 2255 motion

that Respondents concede is timely, I find it necessary and appropriate to do so.

Under 28 U.S.C. § 2255(f), a one-year limitation period applies to motions to vacate, set aside, or correct a federal sentence.  The one-year limitation period runs from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The pertinent date with respect to Mr. Ford's claims in the amended § 2255 motion is the date on which Mr. Ford's conviction became final.  That date was October 6, 2014, when the Supreme Court denied Mr. Ford's petition for writ of certiorari on direct appeal.  Therefore, the original § 2255 motion [#342] filed on October 5, 2015, was timely.  As noted above, I ordered Mr. Ford to file an amended § 2255 motion that includes specific facts in support of his claims.The government concedes that the amended § 2255 motion [#349] filed on November 12, 2015, relates back to the original motion and also is timely.  The question, then, is whether the new factual allegations in support of claim five in Mr. Ford's reply [#372] filed on February 29, 2016, also relate back.  If not, the new factual allegations are untimely and may not be considered.

A district court has discretion under Fed. R. Crim. P. 15(c) to permit an otherwise

untimely amendment to a pending § 2255 motion when the new claim provides additional facts that "'clarif[y] or amplif[y] a claim or theory in the original motion . . . if and only if the [original motion] was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.'" ***United States v. Espinoza–Saenz***, 235 F.3d 501, 505 (10th Cir. 2000) (quoting ***United States v. Thomas***, 221 F.3d 430, 431 (3d Cir. 2000)).  Moreover, it is not enough that the proposed amendments merely relate to the same trial, conviction, or sentence.  ***See Mayle v. Felix***, 545 U.S. 644, 656-64 (2005).  Instead, the proposed amendments must be "tied to a common core of operative facts."  ***Id.*** at 664.

I am not persuaded that Mr. Ford's new factual allegations asserted in his reply in support of claim five clarify or amplify claim five in the amended § 2255 motion.  Mr. Ford did not include in claim five in the amended § 2255 motion any assertion that counsel failed to file a pretrial motion for a voice line-up.  He did allege in the amended § 2255 motion that "counsel was ineffective due to a conflict of interest" ([#349] at 34), but he did not provide in support of that vague and conclusory allegation any facts that the alleged conflict related to a campaign to become a district attorney.  As a result, I find that Mr. Ford's new factual allegations in his reply costitute new ineffective assistance of counsel claims that are untimely and may not be considered.

Furthermore, even if the new factual allegations in the reply were timely, those allegations do not support a cognizable claim that counsel was ineffective.  I am not persuaded that counsel was ineffective in failing to file a pretrial motion for a voice line-up and, in any event, Mr. Ford cannot demonstrate prejudice because Mr. Armendariz's in-court identification was stricken and the other evidence against Mr. Ford was persuasive and overwhelming.  With respect to the alleged conflict of interest, Mr.

Ford's vague and conclusory allegations do not demonstrate that counsel actively represented competing interests or that the conflict of interest adversely affected counsel's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

Mr. Ford also fails to allege facts that demonstrate counsel was ineffective for failing to challenge the testimony of Mr. Armendariz that he knew Mr. Ford from a juvenile jail. For one thing, counsel for Mr. Ford did challenge Mr. Armendariz's credibility and actually asserted during his closing argument that Mr. Armendariz was not reliable and that his testimony about the voice he recognized from a juvenile jail could not have been the voice of the much older Mr. Ford. Tr., Trial – Day 6 (June 20, 2012) [#288] at 52-53. More importantly, the persuasive and overwhelming evidence presented against Mr. Ford convinces me that, even if counsel somehow was ineffective, there is no reasonable probability that the result of the proceeding – the trial – would have been different.

Finally, Mr. Ford fails to allege facts that demonstrate counsel was ineffective by neglecting the case and failing to present a plea offer. The Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Thus, "effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." *United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997). A defendant is prejudiced by counsel's deficient performance during plea negotiations if there is "a reasonable probability that but for incompetent counsel [the] defendant would have accepted the plea offer and pleaded guilty." *Id.*; *see also Missouri v. Frye*, 566 U.S. 133, 147 (2012).

Mr. Ford's claim that counsel was ineffective by failing to present a plea offer lacks merit because he fails to provide specific and detailed factual allegations

regarding the plea offer supposedly emailed to counsel. "A claim of ineffective assistance of counsel with respect to the plea negotiation process presupposes the existence of a plea agreement." ***United States v. Martin***, 789 F.3d 703, 707 (7th Cir. 2015). Thus, a defendant must make a preliminary showing of the evidentiary basis that supports a finding that the government actually offered a plea deal." ***Id.*** Mr. Ford's vague and conclusory allegations about the plea agreement are not sufficient to demonstrate a cognizable claim that counsel was ineffective. ***See id.***

Furthermore, even assuming counsel's performance was deficient, Mr. Ford fails to allege sufficient facts to demonstrate prejudice. Mr. Ford alleges in an affidavit submitted with his reply [#372-10] that he was willing to accept a sentence to time served, ten years, or perhaps longer. However, in the absence of specific allegations regarding the terms of the plea agreement supposedly offered, he cannot demonstrate a reasonable probability that he would have accepted the offer and pleaded guilty.

For these reasons, Mr. Ford is not entitled to relief with respect to claim five.

## F. Claim Six

Mr. Ford alleges in claim six that trial counsel was ineffective with respect to sentencing. The essence of claim six is that counsel was ineffective by failing to argue that Mr. Ford's sentences for the children kidnapping counts should have been imposed to run concurrently with the sentences for the adult kidnapping counts rather than consecutive to the sentences for the adult kidnapping counts. More specifically, Mr. Ford contends counsel should have argued that the sentencing guidelines do not require consecutive sentences, the rule of lenity required me to resolve any ambiguity in his favor, and my reliance on the age of the victims to justify consecutive sentences was improper because the age of the victims already was factored into the sentences for

those counts.  Mr. Ford asserts that, but for counsel's failure to argue for concurrent sentences, I would have imposed different sentences.

At sentencing, I noted the applicable statutory sentences for Mr. Ford's crimes:

> They are, to rehearse, imprisonment on Counts 1, 2, and 5, 262 to 327 months.  Counts 3 and 4, 300 to 327 months, noting that Counts 3 and 4 are subject to a mandatory minimum statutory sentence of not less than 300 months.  And, finally, on Count 6, seven years, 84 months, which by law, must be imposed consecutively to the sentences imposed by the Court on Counts 1 through 5.

Tr., Sentencing Hr'g (Oct. 22, 2012) [#292] at 15-16.  I sentenced Mr. Ford to 216 months on Counts 1, 2, and 5 (the adult kidnapping and conspiracy counts), to be served concurrently with each other; 300 months on Counts 3 and 4 (the children kidnapping counts), to be served concurrently with each other but consecutively to the concurrent sentences for Counts 1, 2, and 5; and 84 months on Count 6 (the firearm count), to be served consecutively to all other sentences.  I provided the following reason for the sentences imposed:

> Now, Counts 3 and 4 are subject to a mandatory minimum sentence of not less than 25 years, or 300 months, and deservedly so because they involve the kidnapping; in this case, the terrorization of not just two children, but small children.

> Count 6 is subject to a mandatory minimum of not less than seven years, or 84 months, which, by law, must be imposed consecutively.

> Now, I conclude that 18 U.S.C. Section 3559(f)(2) does not require that the sentences on Counts 3 and 4, the children kidnapping counts, be imposed consecutively, but I think it is important that the sentences be lengthy and reflect the important difference between the kidnapping of the adults, the parents, and the two small children.

> Thus, after considering the totality of relevant circumstances, both mitigating and aggravating, through the

lens of 18 U.S.C. Section 3553(a)(1) through (7) and 3584(a)
and (b), I conclude that a total sentence of 50 years, 600
months, is necessary and sufficient but not greater than
necessary to achieve the goals and purposes of the
sentencing statute.

Tr., Sentencing Hr'g (Oct. 22, 2012) [#292] at 19-20.

Claim six lacks merit for several reasons.  First, counsel for Mr. Ford did urge me

to impose concurrent sentences for all of the kidnapping counts in his objections to the

presentence report ([#253] at 3), and he proposed the same sentence at Mr. Ford's

sentencing hearing.  Furthermore, as the excerpt from Mr. Ford's sentencing hearing

clearly demonstrates, I was aware that consecutive sentences were not required for the

children kidnapping counts.

Second, Mr. Ford fails to demonstrate the rule of lenity is applicable because the

rule of lenity "applies only in cases where there is a grievous ambiguity or uncertainty in

the language and structure of a provision."  *United States v. Onheiber*, 173 F.3d 1254,

1256 (10th Cir. 1999) (internal quotation marks omitted).  There is no grievous

ambiguity or uncertainty about my discretion to impose consecutive sentences for the

various kidnapping counts.   The fact that the relevant statute is silent does not make it

ambiguous.  *See Staples v. United States*, 511 U.S. 600, 619 n.17 (1994) ("Certainly,

we have not concluded in the past that statutes silent with respect to mens rea are

ambiguous.").  Furthermore, "[i]f multiple terms of imprisonment are imposed on a

defendant at the same time, . . . the terms may run concurrently or consecutively."  18

U.S.C. § 3584(a).

Third, Mr. Ford's argument that my reliance on the age of the victims to justify

consecutive sentences was improper because the age of the victims already was

factored into the sentences for those counts also lacks merit.  To the extent Mr. Ford's

argument is premised on the grouping rules under the Sentencing Guidelines, I note that the grouping rules are not applicable to kidnapping offenses.  *See* USSG §3D1.2 ("Specifically excluded from the operation of this subsection are: all offenses in Chapter Two, Part A (except § 2A3.5)"); § 2A4.1 (guideline governing "Kidnapping, Abduction, Unlawful Restraint").  Furthermore, the grouping rules are not relevant to the issue of concurrent versus consecutive sentences.  *See United States v. Lewis*, 594 F.3d 1270, 1290 (10th Cir. 2010) (rejecting defendant's argument that the district court should have sentenced him to concurrent sentences because "he is confusing (1) grouping offenses for the purpose of calculating an offense level and (2) imposing concurrent sentences for those offenses.").  Finally, Mr. Ford's "double-counting" argument fails because "[i]mpermissible double counting or impermissible cumulative sentencing occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."  *United States v. Flinn*, 18 F.3d 826, 829 (10th Cir. 1994).  Mr. Ford's sentences for the kidnapping counts were not enhanced under the sentencing guidelines.

Fourth, even assuming Mr. Ford's counsel somehow was ineffective with respect to sentencing, Mr. Ford also fails to demonstrate he suffered any prejudice because he fails to allege specific facts that demonstrate a reasonable probability that he would have received a shorter sentence.

Finally, I note that Mr. Ford adds a new argument in his support of claim six in his reply.  In particular, he contends in his reply that counsel was ineffective by failing to seek a two-point reduction under the sentencing guidelines based on the wrongful conduct of the victims.  According to Mr. Ford, the conduct of Mr. Armendariz and Ms.

Flores "provoked the crime as they were dealing large amounts of cocain[e] in the state of Colorado." ([#372] at 20.)  I find that this argument is barred by the one-year limitation period for the same reasons the new arguments in claim five discussed above are time-barred.  Furthermore, even assuming the argument was not time-barred, the claim lacks merit because counsel for Mr. Ford did include in his objections a mitigating argument that the adult victims chose to engage in an activity that placed themselves and their children at high risk ([#253] at 2) and Mr. Ford fails to demonstrate any prejudice.

For these reasons, Mr. Ford is not entitled to relief with respect to claim six.

### G. Claim Seven

Mr. Ford contends in claim seven that counsel on direct appeal was ineffective by failing to raise issues regarding "in-court identifications, suppression of material evidence, fraud upon the court/prosecutor misconduct, creditibility [*sic*] of witness/victim, actual innocence of the petitioner, insufficint [*sic*] evidence at trial, sentencing statutes and ambiguities, inaccurate PRS information." ([#349] at 43.)  Mr. Ford does not allege specific facts in support of claim seven.  Instead, he simply asserts that "more likely than not had the Appeal Court heard these issues, it would have remanded the case back to this district court for further consideration." (*Id.*)  The government contends claim seven should be dismissed because Mr. Ford fails to allege specific facts in support of the claim that demonstrate appellate counsel was ineffective or that Mr. Ford was prejudiced.

I agree that Mr. Ford's vague and conclusory assertions in support of claim seven are not sufficient to demonstrate appellate counsel was ineffective.  As noted above, I must look to the merits of the omitted issue in considering a claim that

appellate counsel was ineffective by failing to raise an issue on appeal. *See Neill*, 278 F.3d at 1057.  However, because Mr. Ford fails to allege specific facts in support of claim seven, I cannot determine whether the omitted issue has merit.  If, as it appears, the omitted issues are the same claims Mr. Ford is asserting in the amended § 2255 motion, those claims lack merit for the reasons discussed in this order.  As a result, Mr. Ford is not entitled to relief with respect to his claim that counsel was ineffective in failing to raise those claims on direct appeal.

### H. Claim Eight

Mr. Ford contends in claim eight that trial counsel was ineffective by failing to investigate or call alibi witnesses.  The government contends claim eight should be dismissed because Mr. Ford fails to allege specific facts in support of the claim or even identify who the alleged alibi witnesses are.  Mr. Ford makes clear in his reply that the alibi witnesses who were not called are his wife and a cousin, the same individuals who are the subject of part of his actual innocence argument in claim ten.  According to Mr. Ford, his wife and cousin were available to testify that he was home on the night in question and did not participate in the crimes charged.

Claim eight lacks merit because Mr. Ford fails to demonstrate he was prejudiced as a result of counsel's alleged failure to investigate the alibi witnesses or call them to testify in his defense.   In light of the persuasive and overwhelming evidence identifying Mr. Ford as a participant in the kidnappings and robbery, I am not persuaded that testimony from his wife and cousin that he was at home and could not have participated undermines confidence in the guilty verdicts.  *See Strickland*, 466 U.S. at 694. Therefore, Mr. Ford also is not entitled to relief with respect to claim eight.

### I. Claim Nine

Mr. Ford contends in claim nine that there was insufficient evidence presented at trial to support his convictions because "witness testimony was false and made up." ([#349] at 45.)  The government argues that claim nine is procedurally defaulted because Mr. Ford failed to raise the claim on direct appeal.  In response, Mr. Ford argues he can demonstrate cause for his procedural default of claim nine because counsel on direct appeal was ineffective by failing to raise the claim.

I conclude that claim nine is defaulted because Mr. Ford fails to allege specific facts that demonstrate a meritorious constitutional claim based on the sufficiency of the evidence.  In short, Mr. Ford's vague and conclusory assertion that "witness testimony was false and made up" does not demonstrate the evidence at trial was insufficient under the relevant standards.  ***See United States v. Faust***, 795 F.3d 1243, 1247-48 (10th Cir. 2015).  Therefore, Mr. Ford fails to demonstrate appellate counsel was ineffective by failing to raise this claim on direct appeal and the claim is procedurally barred.

### J. Claim Ten

Mr. Ford contends in claim ten that he is actually innocent.  It appears that claim ten has two parts.  Mr. Ford first asserts that he has new evidence, in the form of affidavits from his wife and a cousin, that he was home on the night in question and did not participate in the crimes charged.  Mr. Ford has submitted copies of the affidavits [#372-1, #372-2] with his reply.  The affidavits state that the wife and cousin were available and prepared to testify at Mr. Ford's trial but were not called as witnesses.

Mr. Ford alleges in the second part of claim ten that reports of police interviews with Mr. Tabor and Mr. Patterson on October 9, 2009, in which those individuals

allegedly denied any involvement in the kidnapping and robbery contrary to their trial testimony, also demonstrate he is innocent.  Mr. Ford has not submitted copies of the police interviews.

Mr. Ford is not entitled to relief with respect to claim ten.  Even assuming a defendant can maintain a freestanding claim of actual innocence, Mr. Ford fails to allege facts that demonstrate he is actually innocent.

"[A]ctual innocence is not an easy showing to make."  ***United States v. Cervini***, 379 F.3d 987, 991 (10th Cir. 2004).  To be credible, a claim of actual innocence requires a defendant to present "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."  ***Schlup v. Delo***, 513 U.S. 298, 324 (1995).  Mr. Ford then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  ***Schlup***, 513 U.S. at 327.

Mr. Ford fails to identify any new evidence that demonstrates he is actually innocent.  For one thing, he has not presented the interview reports pertaining to Mr. Tabor and Mr. Patterson.  With respect to the affidavits from his wife and cousin, the evidence presented at trial identifying Mr. Ford as a participant in the kidnappings and robbery convince me that the affidavits are not sufficient to demonstrate it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  Therefore, Mr. Ford is not entitled to relief with respect to his freestanding actual innocence claim.

### K. Claim Eleven

Mr. Ford contends in claim eleven that material evidence improperly was suppressed.  Claim eleven is repetitive of claims one and two discussed above because

the material evidence Mr. Ford alleges was suppressed is the same latex glove that is the subject of those claims.  The government contends claim eleven is procedurally defaulted because it was not raised on direct appeal and Mr. Ford asserts that he can demonstrate cause for his procedural default because appellate counsel failed to raise the claim on direct appeal.  I find that claim eleven is procedurally barred for the same reasons discussed above that claims one and two are procedurally barred.

### IV.  MOTIONS TO FILE AMENDED OR SUPPLEMENTAL § 2255 CLAIM

On June 15, 2016, Mr. Ford filed a *pro se* **Motion Requesting Permission to File Amendments to 28 U.S.C.S. 2255, and Amending Ex Post Facto, Nunc Pro Tunc, in the Interest of Justice, Pro Se** [#386] seeking to raise a twelfth claim challenging his conviction under 18 U.S.C. § 924(c)(3)(B).  In that motion, Mr. Ford proposes to challenge that conviction based on the holding of the Supreme Court in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015).  In *Johnson*, the Court held that the definition of "violent felony" in the residual clause of the Armed Career Criminal Act is unconstitutionally vague.  18 U.S.C. § 924(e)(2)(B)(ii).  Mr. Ford seeks to challenge a different statutory sub-paragraph, § 924(c)(3)(B).

On June 22, 2016, counsel from the Office of the Federal Public Defender for the Districts of Colorado and Wyoming entered an appearance on behalf of Mr. Ford.  On June 23, 2016, the government filed an **Opposition to Motion to Amend Motion to Vacate** [#392] arguing that the *pro se* motion to amend is untimely and raises a claim that does not relate back to the original § 2255 motion.  The government also asserts that, because the *Johnson* claim does not relate back to the original § 2255 motion, Mr. Ford must obtain authorization from the Tenth Circuit to file a second or successive § 2255 motion.

On June 24, 2016, counsel for Mr. Ford filed a **Motion to File Supplemental § 2255 Claim and Reply to Government's Opposition** [#393] and a **28 U.S.C. § 2255 Supplemental Motion to Vacate Sentence** [#394].  In the latter motion, Mr. Ford again argues that his conviction under § 924(c) must be vacated based on the holding in ***Johnson***.  On July 8, 2016, the government filed an **Opposition to Motions to Amend (Supplement) Motion to Vacate** [#398].

As noted previously, amendment of a motion under § 2255 is governed by Fed. R. Civ. P. 15.  ***U.S. v. Espinoza-Saenz***, 235 F.3d 501, 503 (10th Cir. 2000).  Mr. Ford is not entitled to amend his motion as a matter of right under Rule 15(a)(1)(A) or (B) because the time periods specified in those sub-paragraphs expired long ago.  Thus, Mr. Ford now may amend only under Rule 15(a)(2), which requires written consent of the opposing party or leave of the court.  The government has not consented to the proposed amendment.  Mr. Ford now seeks leave of the court to amend his motion.  Amendments generally are allowed except when well-defined exceptions apply.  The most notable exceptions are considered when there is a showing of undue delay, undue prejudice to the opposing party, or when the amendment would be futile. ***See, e.g., Castleglen, Inc. v. Resolution Trust Corp***., 984 F.2d 1571, 1585 (10th Cir. 1993).

Under Fed. R. Civ. P. 15(c), an amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory asserted in the original motion may, in the discretion of the district court, relate back to the date of the original motion. ***Espinoza-Saenz***, 235 F.3d at 505.  However, relation back is permitted if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or insert a new theory into the case.  ***Id***.  It is not enough that the proposed

amendments merely relate to the same trial, conviction, or sentence. *See Mayle v. Felix*, 545 U.S. 644, 656-64 (2005). Instead, the proposed amendments must be "tied to a common core of operative facts." *Id.* at 664.

In the first 25 pages of this order, I described and resolved the eleven claims asserted by Mr. Ford in his initial § 2255 motion [#349]. None of those eleven claims is related in any way to the proposed twelfth claim, the proposed *Johnson* claim. Rather, the proposed twelfth claim asserts an entirely new claim and legal theory. The motions to amend or supplement both seek to amend the § 2255 motion to add a new claim which has a legal basis independent of the eleven claims asserted in the initial § 2255 motion [#349]. Under *Espinoza-Saenz*, the proposed new claim does not relate back to the time when the initial § 2255 motion of Mr. Ford was filed. Rather, the timeliness of the proposed new claim must be determined based on the point in time when Mr. Ford first sought to assert the proposed new claim. To determine whether Mr. Ford should be permitted to amend his § 2255 motion to add a new claim under *Johnson*, I must determine the nature of the proposed new claim, and I must determine whether the new claim is timely.

## A. Nature of Proposed New Claim

In his proposed new claim, Mr. Ford seeks to challenge his conviction under § 924(c). Under § 924(c), any person who uses or carries a firearm during and in relation to a crime of violence, or who possesses a firearm in furtherance of such a crime, is subject to an additional prison sentence, as specified in § 924(c)(1)(A). For this provision to be applicable, at least one predicate or underlying offense must have been a "crime of violence." A sentence for a § 924(c) offense must be "in addition to," meaning consecutive to, the punishment provided for the underlying crime of violence.

18 U.S.C. § 924(c)(1)(D)(ii).  As noted previously, Mr. Ford was convicted of four counts of kidnapping and one count of conspiracy to kidnap.  The § 924(c) conviction is valid only if one or more of the kidnapping offenses constitutes a predicate "crime of violence," as that term is defined in § 924(c).

Section 924(c)(3) defines the term "crime of violence" as an offense that is a felony and that -

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  I will refer to subparagraph (A) as the Physical Force Clause and subparagraph (B) as the Risk of Force Clause.

Determining whether kidnapping is a crime of violence under 924(c)(3) calls for application of the categorical approach.  *U.S. v. Serafin*, 562 F.3d 1105, 1107 - 1108 (10th Cir. 2009).  Under that approach, the court must look to the statutory elements of the predicate conviction, rather than to the specific conduct giving rise to that conviction, when determining if a predicate conviction qualifies as a crime of violence.  *See U.S. v. Descamps*, ___ U.S. ___, ___, 133 S. Ct. 2276, 2283 (2013) (applying 18 U.S.C. § 924(e)).  In employing the categorical approach to determine if a particular crime is a crime of violence, a court may not rely solely on the application of legal imagination to the language of a statute.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  Rather, there must be "a realistic probability, not a theoretical possibility," that the statute in question could be applied to conduct that does not constitute a crime of violence.  *Id.*; *U.S. v. Hill*, 832 F.3d 135, 139 - 143 (2nd Cir. 2016).

The crime of kidnapping is defined by 18 U.S.C. § 1201(a) which provides, in relevant part:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when–
>
>> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

Persuasively, Mr. Ford argues that kidnapping does not constitute a crime of violence as defined in the Physical Force Clause, § 924(c)(3)(A).  Section 1201(a) criminalizes kidnappings accomplished through the use or threatened use of physical force as well as kidnappings accomplished through non-physical means, such as inveiglement, decoys, and other deception.  *See, e.g., U.S. v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (§ 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, non-forcible means); *U.S. v. Boone*, 959 F.2d 1550, 1555 (11th Cir. 1992) (federal Kidnapping Act remains applicable to kidnappings accomplished solely by the seduction of victims, such as the inveigling or decoying of kidnapping victims).  Kidnapping, as defined in § 1201(a), does not fall within the Physical Force Clause of § 924(c)(3)(A).

If kidnapping does not fall within the Physical Force Clause, Mr. Ford contends, then kidnapping may only be seen as a § 924(c) crime of violence under the Risk of Force Clause, § 924(c)(3)(B).  Citing *Johnson* as his legal foundation, Mr. Ford claims the Risk of Force Clause is unconstitutionally vague.  If that is true, Mr. Ford asserts,

then his § 924(c) conviction is invalid.  On this basis, Mr. Ford contends his challenge to

§ 924(c)(3)(B) is an assertion of the right newly-recognized in *Johnson*.  I disagree.

Relevantly, the language of the Risk of Force Clause which Mr. Ford proposes to

challenge differs significantly from the language invalidated in *Johnson*.  Section

924(c)(3)(B) describes a predicate offense which "by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the

course of committing the offense."  The residual clause at issue in *Johnson* described a

crime that "involves conduct that presents a serious potential risk of physical injury to

another."  18 U.S.C. § 924(e)(2)(B)(ii).  Mr. Ford contends that the rule established in

*Johnson* applies equally to the language of § 924(c)(3)(B).  He claims that

§  924(c)(3)(B) requires judges to measure the risk posed by imagining the ordinary

case of a particular offense, rather than looking to the facts of a particular case.  In

addition, he claims this subsection describes the level of risk required in imprecise

terms. I disagree.

*Johnson* does not address the language of § 924(c)(3)(B), the Risk of Force

Clause.  Rather, *Johnson* addresses the different language used in § 924(e)(2)(B)(ii).

The United States Court of Appeals for the Tenth Circuit has recognized that the

language of § 924(c)(3)(B) is more narrow in scope than the language of § 924(e), the

language at issue in *Johnson*.  *U.S. v. Serafin*, 562 F.3d 1105, 1108–09 (10th Cir.

2009).  First, § 924(c)(3)(B) has a temporal limitation not present in the residual clause

of § 924(e).  The risk of physical force in § 924(c)(3)(B) must occur in the course of

committing the underlying predicate offense.  That temporal limitation is not present in

§ 924(e)(2)(B)(ii), which covers a wide variety of past crimes.  Second, § 924(c)(3)(B)

addresses a more focused risk – the risk that physical force or the threat of such force

will be used during the underlying predicate offense, as opposed to the general risk that injury might arise from anything done by the defendant in the course of past crime(s), the broader risk described in the residual clause of § 924(e).  Third, the scope of § 924(c)(3)(B) is narrowed further by the fact that this sentence enhancement applies only when a firearm is present.  That relevant and distinct limitation is not a part of the broader residual clause of § 924(e)(2)(B)(ii).  Fourth, § 924(c)(1)(A)(ii) and (c)(3)(B) define a criminal offense which requires a determination of guilt beyond a reasonable doubt by a jury.  In contrast, the residual clause of § 924(e)(2)(B)(ii) is applicable outside of a jury determination of guilt beyond a reasonable doubt.

These key differences compel the conclusion that Mr. Ford, in his proposed challenge to the language of § 924(c)(3)(B), is not asserting the right newly recognized in *Johnson*.  *Johnson* applied due process vagueness limitations to specific language in § 924(e)(2)(B)(ii).  Here, Mr. Ford proposes to challenge significantly different and more narrow statutory language which is applicable in a significantly different and more narrow context.  The claim Mr. Ford seeks to assert in his proposed amendment to his § 2255 motion is not a claim which asserts the right newly-recognized in *Johnson*.

### B.  Timeliness

Section 2255(f) includes a one year period of limitation.

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
>> (1) the date on which the judgment of conviction becomes final;
>
> * * *
>
>> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

review . . .

28 U.S.C. § 2255(f).

The convictions of Mr. Ford became final on October 6, 2014, when the Supreme Court denied his petition for writ of certiorari on direct appeal. June 15, 2016, is the date on which Mr. Ford first filed a motion seeking to amend his § 2255 motion to assert a new claim, the claim he contends is a *Johnson* claim. This motion was filed more than one year after the convictions of Mr. Ford became final.

Mr. Ford claims he is entitled to the benefit of the limitations period defined in § 2255(f)(3). He contends his proposed amendment is timely because he is asserting the right newly recognized by the Supreme Court in *Johnson* and made retroactive to cases on collateral review in *Welch*. *Welch* was decided on April 18, 2016. The first motion to amend filed by Mr. Ford was filed less than one year after the date of the opinion in *Welch*. Thus, applying § 2255(f)(3), Mr. Ford contends he has timely asserted his new claim, his *Johnson* claim.

For the reasons discussed above, I find and conclude that, in his proposed new claim, Mr. Ford is not asserting the right newly-recognized in *Johnson*. His challenge to § 924(c)(3)(B) is substantially different from the challenge to § 924(e)(2)(B)(ii) at issue in *Johnson*. Because Mr. Ford is not asserting in his proposed new claim the right newly-recognized in *Johnson*, Mr. Ford is not entitled to the benefit of the period of limitations defined in § 2255(f)(3). Rather, this proposed new claim is constrained by the period of limitations defined in § 2255(f)(1). The proposed new claim of Mr. Ford, was filed more than one year after the convictions of Mr. Ford became final. Therefore, his proposed new claim is time-barred.

Of course, it is futile to assert a claim that is time-barred as a matter of law. Under Fed. R. Civ. P. 15, I deny the motions to supplement or amend filed by Mr. Ford because the new claim he proposes to assert is futile.

## V.  COA & IFP

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under 28 U.S.C. § 2253(c)(2), this court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  Such a showing is made only when "a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Mr. Ford has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability is denied.

Under 28 U.S.C. § 1915(a)(3), the court certifies that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Ford files a notice of appeal, he also must pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## VI.  CONCLUSION & ORDERS

Mr. Ford is not entitled to § 2255 relief on any of the eleven claims asserted in his initial motion [#349].  Mr. Ford may not properly amend or supplement his motion to challenge the constitutionality of § 924(c)(3)(B).  This proposed new claim is time-barred

because it was filed after the one year period of limitation specified in

§ 2255(f)(1) had expired.  Mr. Ford is not entitled to the alternative period of limitation

specified in § 2255(f)(3) because his proposed challenge to § 924(c)(3)(B) is not an

assertion of the right newly established in ***Johnson v. United States***, ___ U.S. ___,

135 S. Ct. 2551 (2015).


        **THEREFORE, IT IS ORDERED** as follows:

        1. That the **Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28**

**U.S.C. § 2255** [#349] is denied;

        2.   That the **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct**

**Sentence by a Person in Federal Custody** [#342], which was supplanted and

replaced by a subsequent motion [#349], is denied as moot;

        3.   That the *pro se* **Motion Requesting Permission to File Amendments to 28**

**U.S.C.S. 2255, and Amending Ex Post Facto, Nunc Pro Tunc, in the Interest of**

**Justice, Pro Se** [#386] is denied;

        4.   That the **Motion To File Supplemental § 2255 Claim and Reply To**

**Government's Opposition** [#393] is denied;

        5.   That the **28 U.S.C. § 2255 Supplemental Motion To Vacate Sentence**

[#394], is stricken because the court has denied the motion [#393] to file a supplemental

§ 2255 claim;

        6.   That the **Unopposed Motion for Order** [#409], in which Mr. Ford asks the

court to determine whether Mr. Ford should be permitted to file an amended or

supplemental claim is granted;

        7.   That under 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied;

8.  That leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit; and

9.  That the related civil action No.15-cv-02213-REB is closed.

Dated February 23, 2017, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge